728 A.2d 873 (1998)
321 N.J. Super. 308
Beth ACKERMAN, Plaintiff,
v.
THE MONEY STORE, Germain Corio, Susan Santana Gates, and Hari Ahrens, Defendants.
Superior Court of New Jersey, Law Division, Union County.
Decided October 15, 1998.
*874 Bruce P. McMoran, Iselin (McMoran & Associates of counsel, McMoran and Michael F. O'Connor on the briefs), for plaintiff.
Steven Backfish (Ross & Hirsh), for defendants.
James R. Michael, Deputy Attorney General, for The New Jersey Division of Law, Division on Civil Rights (Peter Verniero, Attorney General of the State of New Jersey).
KENTZ, J.S.C. (Retired and temporarily assigned on recall).
This matter is before the court by way of cross motions for summary judgment. The action began with the application of plaintiff, Beth Ackerman (Ackerman or Plaintiff), for a temporary restraining order in the Chancery Division, General Equity, wherein Ackerman sought an order restraining defendant, The Money Store, from compelling a New Jersey resident to sign a form entitled "Mutual Agreement to Arbitrate Claims."
I. Facts
Plaintiff alleged the following facts in her complaint:
Ackerman claims that she accepted an offer of employment from defendant, The Money Store, on June 16, 1997, on the same day the offer was made. Prior to this, she states that she was offered employment by Security Atlantic Mortgage Company as a residential mortgage closer at a salary of $30,000 per year. However, she rejected that offer on June 16, 1997 and began her employment on June 30, 1997, as a mortgage funder/closer with The Money Store at a salary of $30,000 per year, in addition to bonuses and fringe benefits.
Plaintiff contends that on July 8, 1997, she received a new hire package that contained a form entitled "Mutual Agreement to Arbitrate Claims" (the Agreement or Arbitration Agreement). Plaintiff claims that the Agreement required the employee to waive *875 her right to try in a court of law any discrimination and employment claim which arose during her employment with the defendant, except for unemployment and worker's compensation claims. This contract specifically provided, at paragraph 1, the following:
The Company and I mutually consent to the resolution by arbitration of all claims or causes of action, (collectively, "claims"), arising out of the termination of my employment or any claim of discrimination or unlawful harassment of any kind, that the Company may have against me or that I may have against the Company or against its officers, directors, employees, or agents.... The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to, race, sex, sexual harassment, or any type of unlawful harassment, religion, national origin, age, martial status, medical condition, disability, or sexual orientation); and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, including, but not limited to, all claims arising under Title VII of the Civil Rights Act of 1969, the Age Discrimination Act of 1967, the California Fair Employment & Housing Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, or Employee Retirement Income Security Act.
In arbitrating the claims, the proposed Agreement provided for discovery at paragraph 5, permitted each party to be represented by an attorney at paragraph 4, and set forth a procedure for selecting an arbitrator at paragraph 10. The Agreement further stated that "both the Company and I agree that neither of us shall initiate or prosecute any lawsuit or administrative action (other than an administrative charge of discrimination) in any way related to any claim covered by this Agreement" at paragraph 10. According to paragraph 11, the company and employee were to share equally in the costs and fees of the Arbitrator.
Plaintiff further contends that she received a memo on August 20, 1997, from Michael Cook, a compliance specialist with The Money Store, which directed her to sign the Arbitration Agreement. When she did not do so, plaintiff maintains that the office manager of The Money Store's Clark, New Jersey office, Germain Corio (Corio), advised her on August 29, 1997, that she was terminated because she refused to sign the Agreement. After discussing her problem with her attorney, Plaintiff signed the Agreement with the following notation: "I, Beth L. Ackerman have signed this form under protest due to the threat of termination by The Money Store if I do not sign ." On September 2, 1997, plaintiff was informed by defendant Susan Gates (Gates), a supervisory employee of The Money Store, that the defendant refused to accept her Agreement with the "under protest" notation and that she was terminated.
The complaint sets forth five counts under which relief is sought. Count One presents plaintiff's claim for wrongful termination. Count Two presents a claim for violation of New Jersey Law Against Discrimination, N.J.S.A. 10:5-49 (LAD or the Act). Plaintiff demands under these counts the following: (a) compensatory damages including back pay, front pay, benefits, pain, suffering, humiliation, interest, attorney's fees and costs; (b) an order which would bar defendant from coercing or threatening any New Jersey resident into signing the Arbitration Agreement or barring defendant from terminating the employment of any New Jersey resident who refuses to enter in The Money Store's arbitration agreement. Count Three alleges defendants Gates, Corio, and Hari Ahrens (Ahrens), employees of The Money Store, aided and abetted The Money Store in discriminating against plaintiff for refusing to relinquish her rights under N.J.S.A. 10:5-12(d). Count Four sets forth a cause of action based on promissory estoppel, alleging that plaintiff relied on defendant's promise of employment in rejecting the offer of employment with Security Mortgage Co. Inc. Count Five alleges fraudulent concealment, claiming defendant concealed the fact that a condition of employment was the signing of the Arbitration Agreement. Ackerman's Temporary *876 Restraining Order application sought an order which would compel defendant to reinstate plaintiff, but such relief is no longer being sought, nor is it requested in the verified complaint.
II. Procedural History
As stated previously, plaintiff sought a temporary restraining order to enjoin defendant from requiring other New Jersey residents to sign the Agreement to Arbitrate. That request was denied by way of this court's November 3, 1998 letter to the parties which cited a lack of irreparable harm as the basis for the denial. At that time the court stated that the case would remain in the Chancery Division, General Equity Part. In addition, the court ruled that neither plaintiff nor defendant had asserted any factual disputes and the court would therefore deem the pleadings to constitute cross motions for summary judgment, pursuant to R. 4:46 and Concerned Citizens of Wildwood Crest v. Pantalone, 185 N.J.Super. 37, 48, 447 A.2d 200 (App.Div.1982).
Plaintiff and defendant submitted briefs and appeared for oral argument regarding the cross-motions for summary judgment. At that time the court questioned the parties as to whether N.J.S.A. 10:5-13 required that the Office of Administrative Law's Division on Civil Rights (Division) receive notice of the action and copies of pleadings and briefs, which had not been done at that time. On March 3, 1998, a Consent Order Permitting the Division to intervene was filed. Subsequently, the Division filed a brief addressing the plaintiff's claims under the LAD. Thereafter, the parties appeared for oral argument.
At the argument plaintiff contended that not only was she entitled to summary judgment on Counts Two and Three (the LAD claims), but also on the count alleging wrongful termination, promissory estoppel, and fraudulent concealment as defendant failed to oppose such claims by way of affidavits or certifications as required by R. 4:46-2(b) and R. 4:46-5. Plaintiff further claimed that all facts not disputed were deemed admitted. Thus, plaintiff argued that she was entitled to summary judgment as a mater of law on those counts. Defendant opposed such a claim. The court then instructed the parties to brief the issues of whether defendant's failure to submit affidavits or oppose the counts other than the LAD claims rendered those facts not opposed as admitted and if summary judgment was therefore appropriate. The parties filed briefs and reply briefs on this issue.
In the interim period, it was determined that it appeared that the primary relief sought was monetary. Therefore, the court rescinded its prior ruling that the case should remain in General Equity and transferred the case to the Law Division pursuant to R. 4:3-1(b). The parties were so advised and an Order Transferring the Action to the Law Division was entered. The court, however, indicated that he would determine the pending issues sitting as a Judge of the Law Division. The court will now address the cross motions for summary judgment.
III. Count Two: Violation of N.J.S.A. 10:5-12(d) by The Money Store
The main issue before this court is the plaintiff's claim that defendant violated Section 10:5-12(d) of the LAD when they threatened and terminated plaintiff for refusing to give up her statutory right of trial by jury. Plaintiff and defendant have submitted voluminous briefs and letter briefs regarding this issue. While the court has considered all arguments made both in writing and orally, I will briefly summarize each party's arguments concerning the alleged violation of the LAD.
Plaintiff argues that the LAD, under N.J.S.A. 10:5-4, states that the opportunity to obtain employment is a civil right and prohibits employers from discriminating against employees. Plaintiff maintains that N.J.S.A. 10:5-13 expressly states that employees who suffer discrimination as described in the Act have the right to enforce their interest in obtaining employment in court. Further, plaintiff argues that N.J.S.A. 10:5-12(d) protects employees who attempt to exercise their rights under the Act by making it unlawful for an employer to threaten or intimidate anyone who attempts to exercise their rights under the LAD. This *877 relevant provision states it is an unlawful employment practice or unlawful discrimination:
For any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.
[N.J.S.A. 10:5-12(d) (emphasis supplied).]
Plaintiff contends that when defendant demanded Plaintiff sign the Arbitration Agreement and discharged her when she refused, such action constituted a `coercion' or `threat' under the act that `interfered' with plaintiff's right to a jury trial granted under Section 13 of the LAD.
Furthermore, plaintiff argues that arbitration is based on and can be compelled only when there is a voluntary agreement to arbitrate. Alamo Rent A Car v. Galarza, 306 N.J.Super. 384, 703 A.2d 961 (App.Div. 1997). An employee clearly may knowingly and voluntarily waive any statutory remedies that are provided and choose to arbitrate such claims. Id. at 390, 703 A.2d 961. However, this waiver must "be clearly and unmistakably established". Id. at 391, 703 A.2d 961 (quoting Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High School Bd. of Educ., 78 N.J. 122, 140, 393 A.2d 267 (1978)).
Defendant argues that the LAD does not prohibit an employer from establishing a policy where employment claims are arbitrated. Defendant maintains that a employer is free to demand that an employee sign an agreement to arbitrate as a condition of employment. First, defendant argues that under Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647, 114 L.E.2d 26 (1991), agreements to arbitrate claims related to employment are enforceable. See also Great Western Mortgage Corp. v. Peacock, 110 F.3d 222 (1997), cert. denied ___ U.S. ___, 118 S.Ct. 299, 139 L.Ed.2d 230 (1997); Crawford v. West Jersey Health Sys., 847 F.Supp. 1232, 1242 (D.N.J.1994). Defendant maintains that these cases stand for the proposition that an employee can be required to sign an agreement to arbitrate as a condition of employment.
Further, defendant claims the court in Great Western, supra, 110 F.3d 222, found that the defendant in that case failed to demonstrate that public policy in New Jersey forbids arbitration of claims under the LAD. The court ruled that claims under the LAD can be submitted to arbitration as stated in an arbitration agreement. Defendant attempted to file an action in the Federal District Court, alleging claims under the LAD, but the court found such claims were subject to arbitration. Defendant notes that in ruling in favor of Great Western, the court stated the following:
Nor is there merit to Peacock's claims that New Jersey's public policy, as expressed in NJLAD, is offended by requiring her to arbitrate her sexual harassment claim. Peacock argues that New Jersey public policy is expressed clearly in NJLAD, and that because attorney's fees, a two-years statute of limitations, discovery, and punitive damages are all available under NJLAD, any agreement like the Arbitration Agreement which prospectively deprives an employee of those rights runs counter to that public policy.
[Great Western, supra, 110 F.3d at 230.]
Defendant cites this provision and this case for the proposition that there is no prohibition regarding arbitration of state law discrimination claims.
Defendant also maintains that an agreement to arbitrate can be required of an existing employee since an employer has a right to change the conditions of employment. Defendant points out that in Young v. Prudential Ins. Co., 297 N.J.Super. 605, 688 A.2d 1069 (App.Div.), certif. denied 149 N.J. 408, 694 A.2d 193 (1997), Young was required to sign a form agreeing to arbitrate employment disputes after nine years of employment at Prudential. Defendant maintains that although the defendant in that case argued public policy prohibits the waiver of a *878 statutory right to trial by jury, the Appellate Division rejected such claims. Id. at 615-16, 688 A.2d 1069.
Furthermore, defendant argues that as discussed in Alamo Rent A Car, supra, 306 N.J.Super. at 384, 703 A.2d 961, there is no provision or indication in the LAD or the statute's legislative history which demonstrates that those protected by LAD cannot waive the process set forth in N.J.S.A. 10:5-13 (to proceed judicially or administratively) and proceed to arbitration. Id. at 389, 703 A.2d 961.
The Division contends that conditioning employment on the execution of an agreement to arbitrate employment discrimination claims interferes with plaintiff's rights under the LAD. It argues that the LAD was enacted to eradicate discrimination and by doing so allowed those with complaints to pursue their claims by filing a complaint with the Division or by filing directly in the Superior Court. N.J.S.A. 10:5-13. The Division contends that if an employee is required to execute an arbitration agreement, the employee would be forced to relinquish the right to bring a LAD complaint in the Superior Court or with the Division, which has been given broad power to remedy discrimination, if it is found, without forcing plaintiffs to incur litigation costs. N.J.S.A. 10:5-17. The Division claims that it is these rights to pursue claims in a judicial forum or, more importantly, in an administrative forum that work to achieve LAD's goal to eradicate discrimination. Moreover, it maintains that if an employer is permitted to condition employment on a waiver of rights under the LAD, the employer is therefore permitted to remove itself from the jurisdiction of the Division which it claims is vital to the enforcement of the LAD.
Based upon the record before me, I find that the actions of defendant, The Money Store, in requiring plaintiff as a condition of her continued employment to execute the arbitration agreement which relinquished her right to pursue discrimination claims under the LAD either administratively or in a judicial forum, violated Section 12(d) of the LAD. It should be noted that the facts as set forth above were not disputed by defendant, either during oral argument or by way of certification or affidavit. Defendant does not deny the fact that plaintiff began her employment on June 30, 1997, and was requested to sign the "Mutual Agreement to Arbitrate Claims" as part of a "new hire" package on July 8, 1997. It is also undisputed that plaintiff signed the Agreement under protest on August 29, 1998, after being told by defendant that she was terminated for refusing to sign the agreement, and that she received confirmation that she was terminated on September 2, 1998, from Gates.
N.J.S.A. 10:5-12(d) states that it is unlawful to "coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of any right granted or protected by this act." One of the rights set forth in the LAD is the right to file a complaint with the Division or file a complaint in Superior Court if a person claims to be the victim of unlawful employment practice or unlawful discrimination. See N.J.S.A. 10:5-13. In advising plaintiff that she was terminated for refusing to sign the agreement to arbitrate employment discrimination claims, The Money Store conditioned continued employment on the relinquishment of plaintiff's statutory rights granted under Section 13 of the LAD.
The rights granted under Section 13 are not minor provisions of the LAD but represent the means by which an injured party who experiences discrimination may act. They include the right to proceed in Superior Court or to file a Verified Complaint with the Division on Civil Rights. It is this second remedy that is particularly relevant. By proceeding administratively, an employee does not have to hire an attorney and incur other costs which otherwise may deter him or her from pursuing a discrimination claim. I note here the Division argues that by requiring arbitration the employer has removed itself from the jurisdiction of the Division and any investigative or remedial powers it possesses by way of N.J.S.A. 10:5-17. However, while the Agreement provides that neither the employee nor The Money Store "shall initiate or prosecute any lawsuit or administrative action" the Agreement does not, and can not, proscribe pursuit of a claim by the Division. See paragraph 10 of *879 Agreement. The Agreement specifically excepts "administrative charge[s] of discrimination" from Arbitration. Id. Thus, the Division's rights and powers under the LAD are not affected by the Agreement. However, in requiring the Plaintiff to arbitrate discrimination disputes, she would still incur part of the costs of arbitration, pursuant to paragraph 11, whereas if she pursued her claim administratively, the costs of prosecution would be borne by the Division.
The Money Store contends that to find that the LAD was violated in this instance is to misconstrue the statute, since the LAD was intended to remedy discrimination and no discriminatory practices, as contemplated in the LAD, were alleged to have occurred. It certainly is evident that the LAD was enacted to remedy unlawful employment practices and unlawful discrimination related to characteristics such as race, marital status, sex, age, national origin, etc. See N.J.S.A. 10:5-3. However, the LAD, at N.J.S.A. 10:5-3, states that "this act shall be liberally construed in combination with other protections available under the laws of the State." Ibid; Pukowsky v. Caruso, 312 N.J.Super. 171, 177, 711 A.2d 398 (App.Div. 1998) (finding that although neither the LAD nor its legislative history do not specifically list sexual harassment as a form of discrimination, there is no doubt that the act forbids such conduct in the workplace). Given the directive to construe this statute liberally, I find it proper to conclude that The Money Store violated Section 12(d) of the LAD when it conditioned continued employment on waiver of rights granted under Section 13 of the LAD.
As noted earlier, defendant argues that New Jersey courts and federal courts have held that agreements to arbitrate LAD claims are proper and do not violate the Act. Defendant is correct in asserting that courts have held that agreements to arbitrate such employment discrimination claims (whether under Title VII or the NJLAD) are valid. However, those courts have always found that an agreement to arbitrate requires a waiver by the employee which is part of the agreement to arbitrate. See generally, Gilmer, supra, 500 U.S. at 23, 111 S.Ct. at 1650, 114 L.Ed.2d at 35 (indicating Gilmer agreed to arbitrate any dispute between himself and employer that was required to be arbitrated under regulations of the organizations with which he registered); Great Western, supra, 110 F.3d at 232. While many cases, including Young, supra, 297 N.J.Super. 605, 688 A.2d 1069, deal with parties claiming that their consent to arbitrate did not constitute a valid waiver, there is no such dispute here. There was no agreement to arbitrate as plaintiff signed the document "under protest." Thus, the case at hand is clearly distinguishable from those where courts determined that a valid waiver of statutory rights existed. Waiver is not an issue here. Defendant's arguments relating to Great Western, where defendant claims the court stated there is no New Jersey public policy prohibiting arbitration, are correct but misplaced.
Also, defendant argues that Young and Gilmer indicate that an employer can condition employment on the signing of an arbitration agreement. Defendant argues that in Young the Appellate Division rejected Young's argument that public policy prohibits waiving a statutory right to a jury under the LAD, and held that his waiver was effective. In rejecting this argument, the Appellate Division stated that fraud or coercion in obtaining an arbitration agreement may void an agreement's terms. Young, supra, 297 N.J.Super. at 620, 688 A.2d 1069 (discussing Gilmer, supra, 500 U.S. at 33, 111 S.Ct. at 1655-56, 114 L.Ed.2d at 41). The Young court noted that Gilmer and Young were required to sign the agreement to arbitrate as a condition of employment which did not amount to fraud or coercion as the "Supreme Court obviously contemplated avoidance of the arbitration clause only upon circumstances substantially more egregious than the ordinary economic pressure faced by every employee who needs the job." Id. at 621, 688 A.2d 1069. Defendant cites this dicta to demonstrate that an employer can condition employment on the execution of an agreement to arbitrate. However, in stating so the court was dealing with an entirely different scenario than the case at hand as Young had previously signed the agreement. Further, the court's comments were directed towards *880 Young's claim that the arbitration agreement was a contract of adhesion. This court notes that while there may currently be an argument ensuing over the appropriateness of arbitration, nothing in this opinion stems from nor is related to such argument. Furthermore, all employees are free to waive rights provided under the LAD and agree to arbitrate employment disputes.
Defendant also maintains that Young stands for the proposition that an employer can require a current employee to sign an agreement to arbitrate, as Young was an employee of nine years before he was "required" to sign an agreement to arbitrate. Defendant reiterates the argument that an employer may set forth conditions for employment or change the terms of employment. Once again, I note that Young consented to arbitration and his waiver was found to be valid. In the case at hand there was, quite simply, no waiver of the statutory rights to proceed judicially or administratively. Furthermore, employers, because of the concept of employment-at-will, are free to change the terms of employment by requiring, for example, employees to become certified in a certain profession or field. However, in the case at hand, The Money Store sought to demand a condition of continued employment that required waiver of a statutory right under Section 13 of the LAD. Such a right is clearly distinguishable from general terms of employment such as requiring certain professional certifications, hours of employment, or place of employment.
For the foregoing reasons, I conclude that The Money Store violated N.J.S.A. 10:5-12(d) of the LAD in requiring plaintiff as an existing employee to execute an agreement to arbitrate possible employment discrimination claims. In advising her that she was terminated for failing to sign the Agreement, defendant "interfered" with her rights as "granted or protected by the Act" under N.J.S.A. 10:5-13. Therefore, I find that summary judgment, pursuant to R. 4:46-2(c) should be entered on Count Two of the verified complaint in favor of plaintiff. This court makes no comment or ruling as to the remainder of the Agreement which would have required plaintiff to arbitrate claims presumably outside of the LAD, such as compensation disputes.
This matter will proceed for a determination of monetary damages under Count Two of the verified compliant. In addition to these damages, Plaintiff also seeks ancillary injunctive relief in the form of an order directing that The Money Store be barred from coercing or threatening any New Jersey resident into signing the Arbitration Agreement or that they be enjoined from terminating the employment of any New Jersey resident who refuses to enter in The Money Store's Arbitration Agreement. In the foregoing ruling, I have held that The Money Store may not condition continued employment upon the signing of an agreement that would require an employee to relinquish his or her rights under the LAD. I believe that it is not appropriate to issue permanent injunctive relief, a drastic remedy, at this time. First, there is no indication that The Money Store regularly demands that current employees execute agreements to arbitrate employment disputes or that it will in the future. Rather, employees are generally requested to execute such an agreement prior to the commencement of their employment. Second, by virtue of this ruling as set forth herein it is unlawful for an employer to condition continued employment upon the signing of an agreement that would require an employee to relinquish his or her rights under the LAD. I note that The Money Store is free to request that employees sign such an agreement but that they may not condition continued employment on the waiver of rights under the LAD. As I have stated earlier, a voluntary execution of such an agreement is permissible.
IV. Count Three: Individual Defendants Alleged Violation of the LAD
Plaintiff alleges that three employees of The Money Store, Gates, Corio, and Ahrens aided and abetted The Money Store in violating Section 12(d) of the LAD. This action, according to plaintiff, violated Section 12(e) of the LAD which states that it is unlawful "For any person, whether an employer or an employee or not, to aid, abet, incite, compel *881 or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."
R. 4:46-2(c) provides that summary judgment shall be entered provided that there is no genuine issue of material fact and the moving party is entitled to such a judgment as a matter of law. Further, R. 4:46-2(b) provides that all material facts that are sufficiently supported are deemed to be admitted unless the opposing party specifically disputes such facts. In the case at hand plaintiff alleges that defendant Corio advised Ackerman that she was terminated on August 29, 1997, at the request of Ahrens because she would not sign the Agreement. She also alleges that Gates called her on September 2, 1997, to advise her that Ahrens would not accept the agreement signed under protest.
Defendants have not specifically addressed these claims, nor have defendants disputed the facts by way of affidavit or certification as required by R. 4:46-5(a). However, I find that plaintiff has not addressed the issue of how the individual defendants specifically aided and abetted their employer in violating Section 12(d) of the LAD. Thus, under R. 4:46-2(b) Plaintiff has not sufficiently supported such allegations and is not entitled to summary judgment under R. 4:46-2(c).
V. Count One-Wrongful Discrimination
Plaintiff also alleges a claim for wrongful termination under Count One of the complaint. In Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 65-66, 417 A.2d 505 (1980), the New Jersey Supreme Court held that an employer many not discharge an employee at will when the discharge is contrary to a clear mandate of public policy. In order to set forth a valid cause of action under Pierce, a plaintiff must demonstrate that such policy exists under statutory law, judicial decisions, or the State Constitution. Hennessey v. Coastal Eagle Point Oil Co., 129 N.J. 81, 91-92, 609 A.2d 11 (1992).
Ackerman contends that defendant's actions violated public policy as expressed in the LAD. Plaintiff first argues that the LAD provides that the opportunity to obtain employment is a civil right under N.J.S.A. 10:5-4. Further, Plaintiff maintains that N.J.S.A. 10:5-13 permits a person aggrieved under the LAD to proceed administratively or judicially as discussed previously. Plaintiff asserts that a clear public policy regarding trial by jury is expressed in the New Jersey Constitution which provides at Article I, paragraph 9 that the right of trial by jury is "inviolate." Plaintiff argues that this right to trial by jury can not be removed involuntarily. Shaner v. Horizon Bancorp., 116 N.J. 433, 452, 561 A.2d 1130 (1989).
Plaintiff maintains that The Money Store violated public policy and therefore wrongfully terminated her for refusing to waive her right to trial under the LAD and under the New Jersey Constitution. Further, plaintiff contends that there is no countervailing public interest which would justify removal of such rights as discussed in Hennessey, supra. Additionally, Plaintiff claims that defendant has failed to oppose such a claim either by affidavit, certification, or brief. As stated above, I find no issue of fact exists relating to plaintiff's termination.
I further find that there is a clear mandate of public policy permitting persons alleging violations of the LAD to proceed administratively or judicially. N.J.S.A. 10:5-12(d); see also Potter v. Village Bank, 225 N.J.Super. 547, 560, 543 A.2d 80 (App.Div.) (finding clear mandate of public policy from statute), cert. denied, 113 N.J. 352, 550 A.2d 462 (1988). Within the LAD there is an established right permitting a party to seek redress in the courts directly or through the Division. The history of the Act also indicates that there is a clear right to a trial by jury for the aggrieved. The Division of Civil Rights was empowered by the LAD to investigate and prosecute discrimination claims. The Division was also given broad rights to remedy the effects of unlawful discrimination and provides that the Director may order reinstatement, back pay, and make provision for certain facilities to effectuate the Act. N.J.S.A. 10:5-17; see Shaner, supra, 116 N.J. at 437-39, 561 A.2d 1130 (describing broad powers available to the Director). The Act originally did not provide a right to proceed by way of a judicial action, but the Act was amended in 1979 to provide for such a relief. However, in Shaner the Court ruled *882 that there was no express provision providing for trial by jury, finding that if the Legislature intended such a right, it would expressly have provided for it. Following this decision, the LAD was amended to provide a plaintiff with a right to trial by jury. See N.J.S.A. 10:5-13. The legislative history, as contained within the Act, specifically states that where Shaner held that a plaintiff bringing a LAD action was not entitled to a jury trial, "[t]his bill would amend the LAD to grant a plaintiff the right to a jury trial." N.J.S.A. 10:5-3, Assembly Judiciary, Law and Public Safety Committee Statement (citing Shaner, supra). This committee statement clearly sets forth the Legislature's intent to provide for a jury trial.
This clear mandate of public policy must also be balanced against the public interest. In this case, I do not find a countervailing public interest to be present as in Hennessey, supra 129 N.J. at 102, 107, 609 A.2d 11. Thus, I conclude that the LAD provides a clear mandate of public policy that the right to a jury trial be available for a plaintiff. This right may be waived by an employee who chooses to do so, but should not be withdrawn as a condition of employment.
Based upon the policy directly expressed in the body of the LAD, I do not find it necessary to consider whether defendant violated the public policies set forth in Article I, sections five and nine of the New Jersey Constitution. Therefore, I find that a judgment should be entered in favor of the plaintiff on Count One of the complaint.
Plaintiff also sets forth claims for promissory estoppel and fraudulent concealment as grounds for relief. However, it is unnecessary at this time to address these alternative claims for relief by reason of the foregoing ruling. Nor is it necessary to decide the effect of defendant's failure to submit affidavits or certifications in opposition.
All remaining issues are to be addressed at trial.