749 A.2d 893

BETH ACKERMAN, PLAINTIFF, v. THE MONEY STORE, ET AL., DEFENDANTS.

Superior Court of New Jersey
Law Division
Union County

Decided July 27, 1999.

Bruce P. McMoran, for plaintiff (*McMoran & Associates*).

Steven Backfish, for defendants (*Ross & Hirsh*).

*James R. Michael*, Deputy Attorney General, for the New Jersey Division of Law, Division on Civil Rights.

KENTZ, J.S.C. (Retired and temporarily assigned on recall).

## OPINION

This matter is a sequel to *Ackerman v. The Money Store*, 321 *N.J.Super.* 308, 728 *A.*2d 873 (Law Div.1998). It is now before the Court by way of plaintiff's motion for attorneys' fees and costs. Plaintiff seeks an award of $134,691.34 which includes $89,026.25 in attorneys' fees, $1,151.84 in costs and a fifty percent contingent fee enhancement. *See Rendine v. Pantzer*, 141 *N.J.* 292, 661 *A.*2d 1202 (1995). The facts of this case have been set forth by this Court in *Ackerman* and are incorporated herein by reference. *Ackerman, supra*, 321 *N.J.Super.* at 310, 728 *A.*2d 873.

*I. The Power of the Court to Award Interim Attorney's Fees and Costs Pursuant to the New Jersey Law Against Discrimination ("LAD").*

The first issue I will address is whether the Court has the power to grant interim attorney's fees and costs under the New Jersey Law Against Discrimination ("LAD"). *See N.J.S.A.* 10:5–27.1.

██ The Court has performed extensive research regarding the issue of interim attorney's fees and costs under the LAD, but has not discovered any New Jersey case law on point. The Appellate Division, however, has recognized that several orders awarding attorney's fees may issue in a continuing case before final disposition of the matter. *S.N. Golden Estates, Inc. v. Continental Casualty Company*, 317 *N.J.Super.* 82, 89, 721 *A.*2d 307 (App.Div. 1998) (where the underlying action concerned a question of insurance coverage, duty to defend and indemnify). The New Jersey Supreme Court stated in *Lehmann v. Toys 'R' Us, Inc.*, 132 *N.J.* 587, 626 *A.*2d 445 (1993) that "[i]n construing the terms of the LAD, this Court has frequently looked to federal precedent gov-

erning Title VII of the Civil Rights Act of 1964, 42 *U.S.C.A.* § 2000e to § 2000e–17 ... as 'a key source of interpretive authority.' " *Id.* at 600, 626 *A.2d* 445 (citing *Grigoletti v. Ortho Pharmaceutical Corp.*, 118 *N.J.* 89, 96, 570 *A.2d* 903 (1990)). In *Lehmann,* the New Jersey Supreme Court looked to federal cases interpreting Title VII and used that information to interpret the LAD. *See ibid.*

There are two federal cases which are a help to the Court in interpreting the instant matter. *Kyriazi v. Western Electric Company,* 461 *F.Supp.* 894 (D.N.J.1978) involved a gender based employment discrimination class action suit brought pursuant to Title VII. *Id.* at 898. Plaintiffs prevailed on the issue of liability, although damages were not yet awarded. *Id.* at 950. In pertinent part, the court opined that "[d]efendants shall pay to counsel for plaintiffs all reasonable attorneys' fees, expenses and costs for these proceedings culminating in the judgements as to liability, 42 U.S.C. § 2000e– 5(k)." *Ibid.* Compensatory and punitive damages were to be determined and awarded to plaintiff at a later time. *Kyriazi, supra,* 461 *F.Supp.* at 950.

The other case is *Yakowicz v. Commonwealth of Pennsylvania,* 683 *F.2d* 778 (3d Cir.1982) which involved a gender based employment discrimination suit brought pursuant to Title VII. *Id.* at 779. Plaintiff sought to appeal a district court order that denied an interim award of attorney's fees. *Ibid.* The Third Circuit Court of Appeals granted defendant's motion to dismiss the appeal due to the interim nature of the district court's order, as it was not final. *Ibid.* The court's opinion states in part:

> [T]here can be little doubt as to the power of a district court to issue an interim order directing payment of attorney's fees under section 706(k) of the Civil Rights Act of 1964, 42 U.S.C. s 2000e – 5(k) ... in cases of protracted litigation where a party's ability to obtain redress for a civil rights violation would be imperiled without such an award ... The power of the district court to grant interim attorney's fees as to some significant and relatively discrete portion of a case, ... such as the liability phase, is in no way undermined by the fact that a formal, final judgment in favor of the plaintiff has not yet been rendered...
>
> [*Yakowicz, supra,* 683 *F.2d* at 781–82.]

Defendants argue that the above two cases do not support plaintiff's motion. Defendants contend that *Kyriazi* is not analogous to the present case in part because it did not involve interim counsel fees nor any state statutory civil rights claim. Further, defendants claim that the court's holding in *Yakowicz*, as quoted above, was dicta and the present case does not involve protracted litigation nor are interim attorney's fees necessary to insure redress.

Since no New Jersey state case law exists concerning interim attorney's fees pursuant to the LAD, the Court finds it necessary to turn to the federal case law interpreting Title VII for guidance. *See Lehmann, supra,* 132 *N.J.* at 600, 626 *A.2d* 445 (citing *Grigoletti, supra,* 118 *N.J.* at 96, 570 *A.2d* 903). Therefore in view of the holdings in *Kyriazi* and *Yakowicz*, I am satisfied that a court has the power to order interim attorneys' fees and costs under the LAD.

## II. Plaintiff's Status as a Prevailing Party

The second issue I will address is whether plaintiff is a prevailing party pursuant to *N.J.S.A.* 10:5–27.1 which provides in part:

In any action or proceeding brought under this act, the prevailing party may be awarded a reasonable attorney's fee as part of the cost, provided however, that no attorney's fee shall be awarded to the respondent unless there is a determination that the charge was brought in bad faith.

[*Ibid.*]

A prevailing party is defined as a party that succeeds " 'on any significant issue in litigation [that] achieves some of the benefit the parties sought in bringing suit.' " *Szczepanski v. Newcomb Med. Center,* 141 *N.J.* 346, 355, 661 *A.2d* 1232 (citing *Hensley v. Eckerhart,* 461 *U.S.* 424, 436, 103 *S.Ct.* 1933, 76 *L.Ed.2d* 40 (1983)) (quoting *Nadeau v. Helgemoe,* 581 *F.2d* 275 (1st Cir.1978)). A prevailing plaintiff must demonstrate the existence of a causal nexus between litigation and relief granted, that the relief had basis in law and that an enforceable judgment was issued against defendant. *Davidson v. Roselle Park Soccer Federation,* 304 *N.J.Super.* 352, 356, 700 *A.2d* 900 (Ch.Div.1996)

(citing *Feriozzi Co., Inc. v. City of Atlantic City,* 268 *N.J.Super.* 310, 314, 633 *A.*2d 581 (Law Div.1993)).

█ Plaintiff contends that the entry of summary judgment in her favor on the main issue, liability under the LAD, as well as on the issue of wrongful discharge makes her a prevailing party for the present purpose. Defendants emphasize that as the case has not concluded, it is difficult to determine the level of plaintiff's success. Thus, although not conceding to an award of attorneys' fees, defendants contend that grant of attorneys' fees should be reduced to reflect the level of plaintiff's success.

In *Ackerman,* this Court decided issues which came before it by way of cross motions for summary judgment. *Ackerman, supra,* 321 *N.J.Super.* at 310, 728 *A.*2d 873. Plaintiff here succeeded on Counts One and Two of her complaint concerning wrongful termination and violation of *N.J.S.A.* 10:5–49. *Ackerman, supra,* 321 *N.J.Super.* at 322, 325, 728 *A.*2d 873. The Court noted that Count Two was the main issue before it. *Id.* at 314, 728 *A.*2d 873. It is clear to the Court that a causal nexus exists between the litigation and relief granted, that the relief had basis in law an that an enforceable judgment was entered against defendants. *See Davidson, supra,* 304 *N.J.Super.* at 356, 700 *A.*2d 900 (citing *Feriozzi Co., Inc., supra,* 268 *N.J.Super.* at 314, 633 *A.*2d 581). Therefore, the Court finds that plaintiff is the prevailing party in this litigation.

*III. Criteria for Award of Attorneys' Fees and Costs: Rendine v. Pantzer, 141 N.J. 292, 661 A.2d 1202 (1995)*

The third and final issue to be considered is the actual fee and costs award. The New Jersey Supreme Court recently addressed this issue in *Rendine v. Pantzer,* 141 N.J. 292, 661 *A.*2d 1202 (1995). *Ibid.* This Court recognizes that *Rendine* is the controlling authority with respect to the issuance of attorney's fees and costs. *See id.* at 292, 661 *A.*2d 1202, 316. *Rendine* involved, in pertinent part, the calculation of reasonable attorneys' fees and

costs pursuant to fee-shifting statutes such as the LAD. *Id.* at 316, 661 *A.*2d 1202.

## A. The Lodestar Amount

The first step in determining fees is to calculate the "'lodestar: the number of hours reasonably expended multiplied by a reasonable hourly rate.'" *Id.* at 334–35, 661 *A.*2d 1202. The reasonable hourly rate should be determined pursuant to the "prevailing market rates in the relevant community." *Rendine, supra,* 141 *N.J.* at 337, 661 *A.*2d 1202 (citing *Rode v. Dellarciprete,* 892 *F.*2d 1177, 1183 (3d Cir.1990) (citation omitted)). These rates should be current. *Rendine, supra,* 141 *N.J.* at 337, 661 *A.*2d 1202.

In the present case, plaintiff requests attorneys' fees irrespective of contingent fee enhancement in the amount of $89,026.25 incurred through October 31, 1998, reduced by plaintiff from the original amount requested of $104,133.00. Plaintiff further requests costs and disbursements in the amount of $1,151.84. Defendants argue that the Court should wait until final disposition of the case before awarding any attorneys' fees.

A court should use certain guidelines in order to determine the reasonableness of fees. *RPC* 1.5 provides:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

[*Ibid.*]

The Court would like to emphasize that the present case was one of first impression. Specifically, there was no precedent set in

New Jersey concerning an employer's liability under the LAD for requiring an employee to waive her right to adjudicate any discrimination and employment claim which arose during her employment with defendants in a court of law, except for unemployment and worker's compensation claims. Since the case related to a novel issue of law, plaintiff's attorneys could not rely on New Jersey case law or statutes. As a result, plaintiff's attorneys were required to spend more time and effort in preparation for litigation and the litigation itself than they would have had to spend in a case concerning established principals of law.

### i. Hourly Rate Determination

As noted above, the determination of the hourly rate is based upon the reasonable current prevailing market rate. *See Rendine, supra,* 141 *N.J.* at 335, 337, 661 *A.2d* 1202 (citing *Rode, supra,* 892 *F.2d* at 1183 (citation omitted)). A court must be satisfied that the rates are realistic, fair and accurate, or "should make appropriate adjustments." *Rendine, supra,* 141 *N.J.* at 337, 661 *A.2d* 1202. The parties have submitted numerous briefs and certifications to the Court concerning the current prevailing hourly market rate. The certifications detail hourly rates of attorneys with similar experience and qualifications to plaintiff's attorneys.

Plaintiff seeks an hourly rate of $350 for Bruce P. McMoran, $175 for Michael F. O'Connor, and $200 for David J. Percely. Defendants argue that these hourly rates for Mr. McMoran and Mr. O'Connor are too high, and the rate for Mr. Percely should not be allowed at all.

The Court has reviewed the certifications and briefs submitted by the parties. In the Certifications of Bruce McMoran, he details the experience, qualifications and hourly rate of himself, Michael F. O'Connor and David J. Percely. The following is a brief summary of that information and the Court's conclusions.

Mr. McMoran's practice has been exclusive to employment law since 1976. He is a partner in the firm of Barry & McMoran, now McMoran & Associates. He has tried more than 100 employment

law cases. He is a Master in the Sidney Reitman American Inn of Court and has taught and spoken to groups extensively on the subject of employment law. As stated above, Mr. McMoran seeks an hourly rate of $350.

Defendants object to this rate as too high, and have submitted certifications from various attorneys which essentially state that the prevailing market rates for attorneys of similar experience and qualifications in the employment law field receive from $200 to $300 per hour. Certifications submitted by plaintiff contend that the prevailing current rate is $350 per hour. The Court has reached the conclusion that based on the experience and qualifications of Mr. McMoran, an hourly rate of $300 is reasonable and appropriate.

Mr. O'Connor is an associate with McMoran & Associates and has been practicing law since 1995. He was a Judicial Law Clerk in Ocean County, then entered private practice in the area of litigation and finally joined McMoran & Associates in September 1997. Since joining McMoran & Associates, he has practiced almost exclusively in the area of employment law litigation. Mr. O'Connor seeks an hourly rate of $175.

Defendants argue that $175 per hour is too high, and has submitted certifications from various attorneys which basically state that the prevailing market rates for associates of similar experience and qualifications receive from $110 to $160 per hour. A certification submitted by plaintiff states that the prevailing current market rate for associates learned in labor law is $250 per hour. The Court has decided that based on the experience and qualifications of Mr. O'Connor, an hourly rate of $160 is reasonable and appropriate.

Mr. Percely has been practicing law since 1985, with a focus on civil litigation. He was the original attorney plaintiff consulted with respect to the present matter. Mr. Percely has provided various clients with legal advice concerning employment related issues. He has assisted plaintiff's other attorneys.

■ Defendants object to any application by Mr. Percely for attorney's fees because defendants contend that he has no fee agreement with plaintiff, he was never a member of any firm at which Mr. McMoran worked nor has he ever entered an appearance for plaintiff in this case. Plaintiff states that Mr. Percely does have a fee agreement with plaintiff and has provided the Court with a copy of that agreement as well as a detailed billing statement. The fee agreement provides that in the event Mr. Percely is not paid on a contingent basis, his hourly rate is $200. The Court finds that David Percely had a fee agreement with plaintiff and has assisted Mr. McMoran and Mr. O'Connor with the case. The Court has reached the conclusion that based on the experience and qualifications of Mr. Percely, an hourly rate of $200 is reasonable and appropriate.

The Court is satisfied that the above current prevailing hourly market rates for Bruce P. McMoran at $300, Michael F. O'Connor at $160, and David J. Percely at $200 are in accord with prevailing rates and are realistic, fair, accurate and reasonable. *See Rendine, supra,* 141 *N.J.* at 337, 661 *A.*2d 1202.

### ii. Determination of Amount of Hours

"The setting of fees by a court ... involves the sound exercise of discretion." *Gallo v. Salesian Soc., Inc.,* 290 *N.J.Super.* 616, 659, 676 *A.*2d 580 (App.Div.1996) (citing *Rendine, supra,* 141 *N.J.* at 317, 661 *A.*2d 1202). Plaintiff has provided the Court with a descriptive analysis of hours expended for each attorney and corresponding verbal synopsis of work performed. Plaintiff's attorneys, of their own volition, have reduced their hours expended from 495.15 to 426.20, which constitutes a 68.8 hour or a $14,210 dollar reduction.

The Court recognizes defendants' detailed objections to the hours expended for Mr. McMoran and Mr. O'Connor, as stated with particularity in defendants' letter memorandum dated February 9, 1999. The Court incorporates these objections by reference. Defendants emphasize that duplicative and excessive hours

should be eliminated. Defendants state that the lodestar amount can not be determined until the conclusion of the case and note that any time spent on unsuccessful claims or claims that have not yet been determined should be deleted.

For the purposes of this Letter Opinion, since plaintiff's attorneys full amount of hours will be allowed with few exceptions, the Court does not find it necessary to enumerate the specific hours allotted for specific tasks. The Court feels it has addressed defendants' objections with specificity.

As stated earlier, this case was one of first impression in the state of New Jersey and required extensive preparation for litigation. The litigation. The litigation itself required considerable resources in order to argue the novel issues involved.

 The Court determines that time spent on preparation for and arguing the order to show cause with temporary restraints will be allowed. Although the temporary restraining order was not granted, plaintiff was ultimately successful on the complaint. In addition, time spent pursuing issues that were not formally made a part of the complaint will also be allowed because that time helped to develop the causes of action which ultimately did comprise the complaint. Time spent on discovery will also be allowed because it enabled plaintiff to further develop the cause of action.

Moreover, time spent on the counts of fraudulent concealment and promissory estoppel will be allowed. In *Ackerman,* this Court decided that these two issues did not have to be adjudicated because they were alternative theories of relief to the primary relief sought, liability under the LAD. *Ackerman, supra,* 321 *N.J.Super.* at 325, 728 *A.*2d 873. Since plaintiff prevailed on the primary relief, it was unnecessary to determine the alternative theories of relief. However, time spent on the alternative theories was necessary to develop plaintiff's case.

Plaintiff will be allowed time spent for occasions when more than one of her attorneys argued before the Court. It is clear

from the billing summaries that all three of plaintiff's attorneys spent large amounts of time in preparation for litigation. The Court determines that it was necessary to have more than one attorney present because of the complex nature of the novel issues involved.

The Court finds, however, that the part of the billing memorandum citing 1.25 hours by Mr. O'Connor for correspondence with ABC News and the NJ Law Journal will not be allowed. *See D.B. v. Bloom,* 896 *F.Supp.* 166, 172–73 (D.N.J.1995) (holding that plaintiff's attorney's time spent with the media concerning an LAD case was to be excluded from the fee award). The total amount of hours allowed for Mr. O'Connor will therefore be (302.05 − 1.25 =) 300.8. The total amount of hours allowed for Mr. McMoran will be 75.45.

Further, plaintiff is entitled to reasonable costs. *H.I.P. v. K. Hovnanian at Mahwah,* 291 *N.J.Super.* 144, 165, 676 *A.2d* 1166 (Law Div.1996). Plaintiff's request for $22.00 for messenger services to U.S. District Court is denied because it is unrelated to the case before this Court. In addition, the Court will not allow plaintiff's request for $96.67 for secretarial overtime as the Court is not convinced of its necessity. *See Matter of the Estate of Reisen,* 313 *N.J.Super.* 623, 635–36, 713 *A.2d* 576 (Ch.Div.1998).

With respect to Mr. Percely, defendants object to his fee in its entirety, but did not specifically object to any entry in his billing statement. The Court has reviewed his statement with particularity and will allow 48.8 hours, the full and reasonable amount. Further, the Court will allow Mr. Percely's costs for photocopies of $62.10.

The lodestar amount is as follows:

| Attorney | Hours | Hourly Rate | Total Value |
|---|---|---|---|
| Mr. McMoran | 75.45 | $300 | $22,635.00 |
| Mr. O'Connor | 300.8 | $160 | $48,128.00 |
| Mr. Percely | 48.8 | $200 | $ 9,760.00 |
| | | | $80,523.00 |

■ The Court finds that the lodestar amount of $80,523.00 is reasonable and appropriate. The Court will allow costs in the amount of ($1,151.84 − $22.00 − $96.67 =) $1033.17.

*B. Adjustment of the Lodestar: Contingent Fee Enhancement/Reduction*

■ The fee agreements between plaintiff and plaintiff's attorneys were on a contingent basis. In a contingent fee case involving the fee shifting statute of the LAD, the lodestar amount may be enhanced or reduced based on a number of factors. *See Rendine*, supra, 141 *N.J.* at 319, 341, 661 *A.2d* 1202.

■ The lodestar amount should be adjusted "to reflect the actual risk that the attorney will not receive payment if the suit does not succeed." *Id.* at 338, 661 *A.2d* 1202. A court may consider the strength of the party's claim in determining adjustment. *Id.* at 341, 661 *A.2d* 1202. Difficulty in hiring an attorney proven by plaintiff is not a prerequisite to a contingent fee enhancement. *Ibid.*

■ Plaintiff argues that a contingent fee enhancement is warranted in the present case. She contends that:

[a] counsel fee awarded under a fee shifting statute cannot be 'reasonable' unless the lodestar, calculated as if the attorney's compensation were guaranteed irrespective of result, is adjusted to reflect the actual risk that the attorney will not receive payment if the suit does not succeed.

[*Rendine, supra,* 141 *N.J.* at 338, 661 *A.2d* 1202.]

Plaintiff believes that her case presented a very high degree of actual risk for no recovery. She emphasizes that the case involved novel issues and that it has broad public application. She feels that pursuant to *Rendine*, enhancement is appropriate.

■ Another factor to be considered in lodestar adjustment is level of success. *Id.* at 336, 661 *A.2d* 1202. Where the level of success is limited compared to the ultimate relief sought, a court should decrease the lodestar amount. *Ibid.* " 'If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reason-

able hourly rate may be an excessive amount.' " *Rendine, supra,* 141 *N.J.* at 336, 661 *A.*2d 1202 (citing *Hensley, supra,* 461 *U.S.* at 436), 103 *S.Ct.* 1933. Here, defendants contend that plaintiff's success was limited, and therefore the lodestar amount should be reduced.

There has been no award of damages in the present case to date. *Ackerman, supra,* 321 *N.J.Super.* at 325, 728 *A.*2d 873. Defendants argue that although it is not required, any award of attorneys' fees should be related to damages. Defendants contend that damages are material to the reasonableness of attorneys' fees. In *Szczepanski,* however, the Court stated: "We decline to construe New Jersey's fee-shifting statutes to require proportionality between damages recovered and counsel-fee awards even if the litigation ... vindicates no rights other than those of the plaintiff." *Szczepanski, supra,* 141 *N.J.* at 366, 661 *A.*2d 1232.

As stated above, monetary damages are to be determined at a later date. The Court can not speculate as to any monetary amount that may or may not be awarded. The monetary amount could range from zero dollars to a large amount of money, depending on what is awarded at trial. The Court does recognize the fact that proportionality between damages and a fee enhancement is not required. *See ibid.*

At the present time, however, the Court does not feel it can completely and adequately assess a contingent fee adjustment in light of the fact that damages have yet to be determined. In no way does this decision preclude plaintiff from pursuing additional attorneys' fees and contingent fee enhancement at a later time. Further, this decision does not preclude plaintiff from pursuing a contingent fee enhancement for the time period discussed herein after damages are determined. These rights will be reserved for the future.

Accordingly, no contingent fee adjustment is awarded.

The favored party is directed to submit an appropriate order.